J-S95001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.A.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF T.J.B., MOTHER | |
| | No. 2848 EDA 2016 |

Appeal from the Decree Entered August 24, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at Nos: CP-51-DP-0001784-2013; CP-51-AP-0000850-2015

| | |
|---|---|
| IN THE INTEREST OF: A.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF T.J.B., MOTHER | |
| | Nos. 2850 EDA 2016 |

Appeal from the Decree Entered August 24, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at Nos: CP-51-DP-0001785-2013; CP 51-AP-0000849-2015

BEFORE:  STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 13, 2017**

T.J.B. ("Mother") appeals from the decrees entered August 24, 2016, in the Court of Common Pleas of Philadelphia County ("trial court"), which involuntarily terminated her parental rights to her minor children, A.A.S. and

A.S (together "the Children") and changed the permanency goal to adoption. After careful review, we affirm.

The trial court provided the following factual and procedural summary.

The children were born as follows: A.A.S., on August 30, 2005[,] and A.S. on April 20, 2009.

On August 26, 2013, DHS[(Department of Human Services)] received a substantiated Child Protective Services (CPS) report alleging that A.A.S. had two lumps on his head and belt marks and welts covering his body. [Mother's] paramour beat him with a belt. [Mother] pushed A.A.S.' head against the wall approximately three days prior. Furthermore, A.A.S. was lethargic and complained of a headache. A.A.S. was transported to Saint Christopher's Hospital. The report indicated that [Mother] used physical discipline on A.A.S. for touching her personal belongings. Moreover, DHS learned that A.A.S. had old scars on his arms and chest. A.A.S. indicated that he had been subjected to severe physical discipline in the past. Subsequently, the Special Victims Unit of the Philadelphia Police Department conducted an investigation into A.A.S.' injuries. [Mother] was arrested on charges of [a]ggravated and [s]imple [a]ssault, [e]ndangering the [w]elfare of a [c]hild as a [p]arent [("EWOC")] and [r]ecklessly [e]ndangering [a]nother [p]erson [("REAP")]. She was incarcerated at Riverside Correctional Facility [(]RCF).

On August 26, 2013, DHS obtained an Order of Protective Custody (OPC) for A.A.S. and A.S. A.A.S. and A.S. were subsequently placed in foster care.

A [s]helter [c]are [h]earing was held on August 28, 2013[,] before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment of A.A.S. and A.S. to the care and custody [of] DHS.

On September 4, 2013, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated A.A.S. and A.S. dependent and committed them to the care and custody of DHS. [Mother's] visits with the children were suspended.

The matter was listed on a regular basis before the Judges of the Philadelphia Court of Common Pleas-Family Court Division-Juvenile Branch pursuant to section 6351 of the Juvenile Act. 42 Pa.C.S.A. § 6351, and evaluated for the purpose of determining or reviewing the permanency plan of the children.

On February 19 2014, a [p]ermanency [r]eview and [a]ggravated [c]ircumstances [h]earing was held before the Honorable Jonathan Q. Irvine. Judge Irvine found that there was clear and convincing evidence to establish that [a]ggravated [c]ircumstances existed as to [Mother]. Furthermore, Judge Irvine found that [Mother] committed child abuse regarding A.A.S.

In subsequent hearings, the DRO's reflect the [trial court's] review and disposition as a result of evidence presented, addressing, and primarily with the goal of finalizing the permanency plan.

[On November 24, 2015, DHS filed petitions to involuntarily terminate Mother and Father's[1] parental rights.]

On April 25, 2016[,] and August 24, 2016, a [t]ermination of [p]arental [r]ights hearing was held for [Mother] in this matter.

On August 24, 2016, the [trial court] found by clear and convincing evidence that [Mother's] parental rights of A.A.S. and A.S., should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the [trial court] held it was in the best interest of the children that the goal be changed to adoption.

Trial Court Opinion, 10/14/2016, at 1-2.

Mother filed a notice of appeal on September 1, 2016, and the trial court issued a 1925(a) opinion on October 14, 2016.

Mother raises five issues on appeal, which we quote verbatim.

---

[1] Father consented to the termination of his parental rights to the Children. The trial court confirmed the consent on August 24, 2016.

I. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. sections 2511(a)(1) where [Mother] presented evidence that she was compliant with all of her Family Service Plan Goals.

II. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.C.S.A. sections 2511(a)(2) where[Mother] presented evidence that she will remedied her situation by meeting her goals of housing, parenting and mental health treatment and therefore does have the capacity to care for her children in her home.

III. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511(a)(5) where evidence was provided to establish that [Mother] is capable of caring for her children.

IV. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511(a)(8) where evidence was presented to show that [Mother] is capable of caring for her children since she was has completed her FSP goals.

V. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511(b) where evidence as presented that established the children lived with Mother prior to being placed bond.

Appellant's Brief at 7 (sic).

Our standard of review for an order involuntarily terminating parental rights is well established.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standards of the best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the matter *sub judice*, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). In order to affirm the trial court, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here we analyze the trial court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds

\*\*\*

(2) The repeated and continued incapacity abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Mother's argument is that the trial court discounted the evidence that she completed all of the family service plan goals including parenting and mental health treatment, took responsibility for her actions and plead guilty to EWOC and REAP. "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216

(Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

The trial court found that Dr. Erica Williams completed a parenting capacity evaluation on Mother in March 2016 and found that "she did not present the capacity to provide safety and/or permanency to either child." *See* Goal Change Hearing, 4/25/16, at 10. Furthermore, Mother continued to have extensive contact with her paramour, the same paramour that beat A.A.S. with a belt. The trial court found that Mother visited him thirty-seven times while he was incarcerated. Moreover, the trial court found that A.A.S. and A.S. are afraid of Mother and A.A.S. is afraid of Mother's paramour. After careful review of the record, we conclude that the trial court had a factual basis for its decision and did not abuse its discretion by terminating Mother's parental rights to the Children under Section 2511(a)(2).

We must next determine whether the trial court abused its discretion when it terminated Mother's parental rights pursuant to Section 2511(b).

> Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). As this Court has explained, "Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis." *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008). "While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best

- 7 -

interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citing *K.K.R.-S.*, 958 A.2d at 533-36).

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *N.A.M.*, 33 A.3d at 103).

Mother's entire argument is that because she was unable to have any contact or visit with the Children, her opportunities to mend their relationship was limited, and therefore termination does not serve the Children's needs or welfare. Mother fails to develop her argument in her brief; however, this Court will address the merits of her claim. The trial court found that the Children

> reside in a kinship home with their maternal aunt. [The Children] consistently tell the DHS social worker that they are afraid of [Mother] and do not want to see her. The [Children] look to the maternal aunt for love, comfort[,] and support. The maternal aunt meets the daily needs of the [C]hildren. Furthermore, [the Children] would not suffer permanent emotional damage if [Mother's] parental rights were terminated.

Trial Court Opinion, 10/14/2016, at 6 (citations omitted). Our review of the record confirms that the trial court had a factual basis for its decision and did not abuse its discretion when it terminated Mother's parental rights pursuant to Section 2511(b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2017